United States District Court
Southern District of Texas
**ENTERED**
October 06, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LEVEL 3 COMMUNICATIONS, LLC and WILTEL COMMUNICATIONS, LLC | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-21-2826 |
| GRAYCO COMMUNICATIONS, L.P., *et al.*, | § § § § | |
| Defendants. | § § | |

**MEMORANDUM AND ORDER**

One of the risks in excavation work is hitting underground facilities or lines. That is what happened here. The issue is who caused it to happen and who is liable for the damages it caused.

Level 3 Communications, LLC is a telecommunications company that provides services nationwide through underground fiber-optic cables and conduits. Level 3 and its subsidiary, WilTel Communications, LLC, sued Grayco Communications, L.P., Grayco-G.P., Inc., and Grayco Cable Services (collectively, "Grayco"). Grayco performs directional downhole drilling and installs fiber-optic cables for third parties.

Comcast Cable Communications, LLC, hired Grayco on August 13, 2019, to install fiber-optic cables and conduits at a location in Cypress, Texas. Level 3 has an underground fiber optic cable facility off Highway 290 and Fairfield Falls Way. On August 30, 2019, while excavating, Grayco struck Level 3's underground facility. Level 3 alleges that $167,000 in actual damages resulted.

The issue is whether Grayco committed negligence. Level 3 argues that Grayco willfully ignored information about where Level 3's facility was. Grayco argues that no evidence:

(1) supports a finding that Grayco breached any legal duty of care owed to Level 3; (2) shows that Grayco acted with an extreme degree of risk or that Grayco had subjective awareness of the risk of striking Level 3's underground facilities; or (3) indicates that Grayco was out of compliance with the Texas Underground Facility Damage Prevention and Safety Act.

Grayco moves for summary judgment. (Docket Entry No. 26). Having considered the pleadings, motion, response, reply, arguments of counsel, and the applicable law, the court denies Grayco's motion, finding factual disputes material to determining liability. The reasons are set forth below.

I. The Legal Standards

A. The Summary Judgment Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)). "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting reference omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the non movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non movant the burden of demonstrating by competent summary judgment proof that there is [a dispute] of

2

material fact warranting trial." *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration in original) (quoting reference omitted). "However[,] the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets its Rule 56(c) burden, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted). The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted). Of course, all reasonable inferences are drawn in the nonmovant's favor. *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022). But a nonmovant "cannot defeat summary judgment with 'conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

### B.   Negligence

Under Texas law, the elements of a negligence cause of action are that the defendant owed the plaintiff a legal duty, breached that duty, and that the plaintiff sustained damages as a result of that breach. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). The elements of a gross negligence claim are "an act or omission":

> (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

>  (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

TEX. CIV. PRAC. & REM. CODE § 41.001(11). The degree of care owed may be established by statute or regulation, or by common law. *See In re CenterPoint Energy Houston Elec., LLC*, 629 S.W.3d 149, 163 (Tex. 2021); *Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 278 (Tex. 1979).

## II. Analysis

The Texas Underground Facility Damage Prevention and Safety Act requires excavators to "notify a notification center not earlier than the 14th day before the date the excavation is to begin or later than the 48th hour before the time the excavation is to begin." TEX. UTIL. CODE. § 251.151(a). Operators of underground facilities are then required to "mark the approximate location of its underground facilities at or near the site of the proposed excavation if the operator believes that marking the location is necessary." *Id.* § 251.157(a). "An excavator who has fully complied" with the notification requirements "may not be liable for damage to an underground facility that was not marked in accordance with this chapter." *Id.* § 251.157(c).

It is undisputed that, on August 13, 2019, Grayco notified Texas 811, a notification center, that it would start excavation work at the Cypress location beginning on August 21. Adrian Amaya of AMC Inspection & Locators LLC ("AMC") responded to the notification on August 16, 2019. Amaya found the location, put location markers in place, and photographed the location markers for where the Grayco excavation work would take place. On August 22, 2019, after the excavation work had started, Grayco placed a second request, this time to either place location markers for underground facilities in the area, or to indicate a lack of markings (a "no-response" request). On August 26, 2019, Amaya notified Texas 811 (the organization with which Grayco had placed its

requests) of the markings already placed. Amaya also provided Grayco with photographs of the markings Amaya had previously placed locating Level 3's underground facility. (Docket Entry No. 28-1 ¶ 6). On August 30, 2019—the day Grayco hit the Level 3 underground facility—Amaya returned to the site to refresh his previous locator paint marks. Amaya made this trip at the request of a Level 3 employee, Senior Network Implementation Program Manager Josue Romero. (Docket Entry 28-1 ¶¶ 7–8). Amaya confirmed that the original location markings remained visible, adjusted the markings near the previous strike location based on his locator signal, refreshed his previously applied markings with bright orange paint, and took photographs to document his work. (Docket Entry No. 28-1 ¶ 8–9, Exhibit 5). A short time later, Level 3 technicians determined that damage to its underground facility had occurred at Grayco's excavation site and resulted from Grayco's excavation work.

Relying on the declaration of Grayco supervisor John Bell, Grayco argues that Level 3 did not apply accurate locator markings. Bell states in his declaration that for a locator marking to be accurate by industry standards, it must be within 18 inches of the actual utility location. He then points to a picture that purports to show that the distance between Amaya's original marking and the new marking (which he appears to assume is the actual location) is 28 inches:

5



(Docket Entry No. 26-3, Exhibit B).

Level 3 argues that the above image is inauthentic, does not represent the strike location, and is distorted. Level 3 notes that Bell never confirms the authenticity of the photograph, who took it, or when and where it was taken. Level 3 also disputes that 28 inches between a marking and the utility location is beyond the industry standard for accuracy. It provides evidence to the contrary and argues that industry standards require a tolerance zone of half the nominal diameter of an underground utility plus 18 inches on either side. Level 3 argues that such a tolerance zone is utilized within the industry precisely because the operator markings locating excavation work in relation to underground facilities are simply approximations.

The record discloses factual disputes that are genuine and material to determining what duties, if any, were owed, and whether they were breached. Grayco's motion for summary judgment (Docket Entry No. 26) is denied.

The joint pretrial order will be due on October 21, 2022. Docket call is set for October 24, 2022 at 10:30 a.m. by Zoom.

SIGNED on October 6, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge